OPINION
Appellant, Lagoons Point Land Co., appeals from the entry of a judgment settlement order by the Probate Division of the Lake County Common Pleas Court. For the reasons that follow, we affirm the judgment of the probate court.
The following facts are pertinent to this appeal. On September 19, 1997, appellee, the City of Mentor, instituted an appropriation action against land owned by appellant "for purposes of establishing park lands and related recreational facilities, as well as to preserve and protect the environment, the ecology and the coastline of Lake Erie and prevent erosion * * *." Appellant subsequently filed an answer objecting to the appropriation action on the grounds that there was no necessity for the acquisition of the property due to the fact that the city already possessed adequate land for its stated purpose.
In lieu of holding an evidentiary hearing on the issue of necessity, the parties filed a joint stipulation that "the testimony and evidence which would be presented by the parties would be identical to the testimony and evidence presented on the same issue in the previously decided [City of Mentor v. Richard M.Osborne, Trustee,] Case No. 16-CV-816[.]" After reviewing the evidence submitted in the Osborne case, the probate court entered judgment in favor of appellee on the issue of necessity and found that appellee had the right to appropriate the property in question.
On June 28, 1999, the case proceeded to trial before a magistrate for the sole purpose of determining the compensation to be paid appellant for the appropriated land. Before the trial was concluded, on July 1, 1998, the parties entered into a voluntary settlement agreement whereby appellant would deed the property over to appellee in exchange for $600,000. The settlement was read into the record by counsel for appellant as follows:
"THE MAGISTRATE: On The record.
 "After much discussions, I think a settlement has been reached. And with that, I'm going to leave it to Mr. Grendell to put on the record the settlement.
"I think you had something written out?
"MR. GRENDELL: No.
 "The settlement is that the City will pay $600,000; there will be no adjustment to prorations for real estate taxes; that, as I understand it, the City Council will meet on Tuesday, which, I believe, is July 7th; that on Wednesday morning, July 8th, we will meet either at City Hall or Chicago Title, the City will deliver the check for $600,000, and we will deliver the deed.
 "And that this will be held in camera, in confidentiality, until those actions have been completed, at which time, the Court can then enter an order or record reflecting that the property has been sold pursuant to the order of the Court can then enter an order on record reflecting that the property has been sold pursuant to the order of the Court for the $600,000 figure.
 "Additionally, all parties are to keep this confidential, subject to the sunshine law requirement of the City Council, but only subject to that. And that Council, for the parties are not to discuss this, outside of their meeting with their clients, between now and next Wednesday."
 On the same day, the probate court entered a written order indicating that the parties had reached an in-court settlement.
On July 7, 1998, appellant filed a Notice of Breach of Settlement alleging that appellee had violated the covenant of confidentiality. In its notice, appellant argued that the covenant was a condition precedent to a final settlement of the case, and as a result of appellee's alleged violation, the terms of the agreement had no further force or effect. Appellant also requested that the case be set for a jury trial.[1]
On July 8, 1998, appellee filed a Motion to Enforce Settlement Agreement based upon appellant's failure to deliver the deed to the appropriated property in accordance with the settlement agreement. Appellant did not file a motion in response.
On July 27, 1998, the probate court granted appellee's Motion to Enforce, finding that the settlement agreement was unambiguous and binding on the parties. The next day, the probate court entered a judgment settlement which confirmed the settlement agreement and transferred title to the property in question to appellee, predicated upon appellee paying appellant $600,000. Appellant filed a timely appeal and asserts four assignments of error for our consideration:
 "[1.] The trial court erred in placing the burden of proof upon the plaintiff-appellant [sic] to show a lack of necessity when the subject appropriation involves an excess taking governed by Article XVIII, Section 10 of the Ohio Constitution, under which the burden of showing a necessity is upon the appropriating body.
"[2.] The trial court erred in finding necessity.
 "[3.] The trial court arbitrarily and erroneously excluded the valuation testimony of owner's expert, even though his valuation method has been extensively recognized and permitted by the Ohio Supreme Court.
 "[4.] The trial court erred and abused its discretion by entering a `Judgment Settlement' when the City had violated an essential condition precedent to such settlement."
We will address appellant's fourth assignment of error first because we determine that it is dispositive of this appeal. In its fourth assignment of error, appellant argues that the probate court erred in entering a judgment because, according to appellant, a condition precedent to the settlement had not been met by appellee. Appellant believes that appellee's violation of the covenant was demonstrated by the fact that Errol Nozik, a person not a party to the appropriation action, contacted appellant about the settlement negotiations and filed a motion to intervene in the proceedings.[2] Moreover, appellant argues that the probate court erred in failing to hold an evidentiary hearing before enforcing the settlement because the terms of the agreement were disputed by the parties. We disagree.
First, we note that the agreement reached by the parties does not contain a condition precedent concerning confidentiality. Rather, appellant mistakenly characterizes the confidentiality term of the agreement as a condition precedent. Both parties agree that confidentiality was made a part of the settlement. However, a plain reading of the settlement agreement, as read into the record by appellant's counsel, reveals that there is absolutely no conditional language regarding the term of confidentiality. Instead, it is simply another term of the settlement agreement. This distinction is important because a violation of a condition precedent, material to the agreement, would void the entire agreement, which, in turn, would relieve appellant of its obligation to deed the property to appellee.
"It is axiomatic that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party." Continental W. Condominium Unit Owners Assn. v. Howard E.Ferguson, Inc. (1996), 74 Ohio St.3d 501, 502; Miller-Finocchioliv. Mentor Landscapes Supply Co., Inc. (1993), 90 Ohio App.3d 815,819. Furthermore, settlement agreements are highly favored in the law. State ex rel. Wright v. Weyandt (1977), 50 Ohio St.2d 194, syllabus.
If the parties to an action voluntarily enter into an oral settlement agreement while in the presence of the trial court, the agreement is a binding contract. As a result, unless a party has moved to set aside such an agreement, the trial court can enter judgment consistent with that agreement. Spercel v. SterlingIndus. Inc. (1972), 31 Ohio St.2d 36, paragraph two of the syllabus. See, also, Bolen v. Young (1982), 8 Ohio App.3d 36, 37
("[w]here the settlement agreement is arrived at by the parties in open court and preserved by being read into the record or being reduced to writing and filed, then the trial judge may, suasponte, approve a journal entry which accurately reflects the terms of the agreement, adopting the agreement as his judgment"). Furthermore, a settlement agreement can not be set aside solely upon the basis that one of the parties has changed its mind. Mackv. Polson Rubber Co. (1984), 14 Ohio St.3d 34. As noted by the Supreme Court of Ohio in Spercel:
 "Once the settlement agreement * * * [is] achieved through the efforts of the trial judge, * * * [appellant] had a duty, if he wished to disavow that agreement, to file a motion to set it aside.
 "To permit a party to unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity, even though * * * the agreement is of binding force." Spercel, supra, at 40.
 As a result, a settlement agreement can only be set aside for the same reasons that any other contract could be rescinded, such as fraud, duress, or undue influence. Mack at syllabus. Alternatively, as was the case here, a party could claim that a material condition precedent had not been met. If this were true, no binding contract would have ever been entered into by the parties in the instant matter.
As to the enforcement of a settlement agreement, "[w]here the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." Rulli v. Fan Co. (1997), 79 Ohio St.3d 374, syllabus. See, also, Mack, supra, syllabus. It is logical then if a dispute merely involves the enforcement of a settlement agreement, an evidentiary hearing is not required, and a trial court may decide a motion to enforce solely on the briefs submitted by the parties.
Although appellant argues that it was forced to enter into the settlement agreement because the probate court would not allow its expert to testify as to the value of the appropriated property, appellant does not claim that appellee acted fraudulently, nor does it dispute the meaning of any term contained in the settlement agreement. In actuality, appellant implicitly acknowledges the mutuality of the agreement by seeking relief under one of the agreement's terms. As such, this is not an issue of ambiguity concerning the meaning of a particular term. Instead, appellant claims that appellee failed to meet a condition precedent, and as a result, no contract was formed. Thus, according to appellant, it was not required to turn the deed over to appellee.
Because we determine that the resolution of this case turns on whether or not appellee violated the covenant of confidentiality, rather than the nature of the term itself, we conclude that the probate court was not required to conduct an evidentiary hearing on the mater. Rulli, supra.
With the foregoing in mind, we must now decide whether or not the probate court abused its discretion in finding both that appellee did not breach the settlement agreement, and that appellee was entitled to enforcement. It is within the sound discretion of the trial court to enforce a settlement agreement, and its judgment will not be reversed where the record contains some competent, credible evidence to support its findings regarding the settlement. Phillips v. Yellow Freight Sys., Inc.
(Jan. 25, 1991), Trumbull App. No. 89-T-4217, unreported, at 2, 1991 WL 6016.
In the present case, appellant argues that appellee notified Errol Nozik of the settlement negotiations. Appellant supports this assertion by referencing the fact that Errol Nozik's attorney faxed a letter to appellant's attorney regarding the negotiations, and that Errol Nozik attempted to intervene in the appropriation action. Without more to support the claim, however, appellant's theory remains unsubstantiated and untenable.
First, Errol Nozik owns fifty percent of the shares in appellant, while his father, Albert Nozik, owns the other fifty percent. However, at no time during the litigation did Errol Nozik participate in the action. This is in direct contrast to his father, who was an active participant in the negotiations and even signed some of the documents filed with the probate court as appellant's attorney. In fact, the confidentially provision in the settlement agreement was requested by appellant and Albert Nozik to prevent Errol Nozik from learning of the negotiations.[3]
Additionally, appellant's reliance on the letter sent by Errol Nozik's attorney is misplaced. An examination of the letter in question shows that it was written on June 30, 1998, the day before the settlement was reached. In addition, the letter was received by fax at 11:36 a.m. on the day that the settlement was actually communicated to the court and read into the record. While the record before us is not clear as to exactly what time the terms of the final settlement agreement were reached, the probate court's order journalizing the settlement agreement was filed at 3:59 p.m. on July 1.
A further review of the record shows that appellant failed to provide the probate court with credible evidence that appellee violated the covenant of confidentiality. There is nothing to indicate that appellee was the sole source of the confidential information, or that it notified Errol Nozik of the settlement negotiations. It can hardly be argued that the letter from Errol Nozik's attorney or the subsequent motion to intervene constitutes conclusive evidence that appellee violated the covenant of confidentiality. Appellant's assumptions, standing alone, are insufficient to support this claim.
As a result, we conclude that the probate court did not abuse its discretion in finding that appellee did not breach the confidentiality clause of the settlement agreement. We also conclude that the probate court did not abuse its discretion in enforcing the settlement agreement in favor of appellee. Appellant provided no compelling reason or conclusive evidence that would excuse its non-performance of a valid contract. Accordingly, appellant's fourth assignment of error is without merit.
Because we conclude that the probate court properly found that a valid settlement agreement existed between the parties, we will not address appellant's first three assignments of error. Ohio courts have consistently held that where a settlement agreement is reached in a dispute, the parties have waived their right to claim error and are barred from relitigating issues involved therein.Ivans v. Chester Twp. Trustees (Aug. 11, 1989), Geauga App. No. 88-G-1473, unreported, at 2, 1989 WL 92127; C.B.H., Inc. v. JosephSkilken Co. (Dec. 17, 1993), Lake App. No. 93-L-038, unreported, at 4, 1993 WL 548497; Kalk v. DeSantis (Aug. 27, 1987), Cuyahoga App. No. 52631, unreported, at 1, 1987 WL 16182; Wasson v.Brumbaugh (June 26, 1981), Wood App. No. WD-80-70, unreported, at 2, 1981 WL 5686.
It is, therefore, unnecessary to discuss the merits of any of appellant's other three assigned errors. By entering into the settlement agreement, appellant has waived its right to claim error allegedly occurring prior to the agreement. Appellant's first, second, and third assignments of error are without merit.
For the foregoing reasons, appellant's assignments of error are without merit. The judgment of the probate court is affirmed.
FORD, P.J., NADER, J., concur.
[1] Although not titled as such, appellant's notice of breach actually appears to be a motion to set aside the settlement agreement. As a result, we will treat it as such a motion.
[2] The probate court eventually denied Errol Nozik's motion to intervene.
[3] Neither party offers a reason why Errol Nozik never participated in the appropriation action despite acknowledging his one-half interest in appellant. In addition, it was suggested at oral argument that Albert Nozik did not have corporate authorization to represent appellant during this action. However, this issue was not raised in the probate court below. As a result, we will not address the issue for the first time on appeal.