[Cite as *Baum v. Perry-Baum*, 2019-Ohio-3923.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

David Baum

    Appellee

v.

Jennifer L. Perry-Baum

    Appellant

Court of Appeals No. WD-18-085

Trial Court No. 2013 DR 0140

**<u>DECISION AND JUDGMENT</u>**

Decided: September 27, 2019

* * * * *

Patricia Hayden Kurt and Alex M. Savickas, for appellee.

Martin J. Holmes, Sr., for appellant.

* * * * *

**ZMUDA, J.**

{¶ 1} This is an appeal from the Wood County Court of Common Pleas, Domestic Relations Division, which granted plaintiff-appellee, David M. Baum and defendant-appellant, Jennifer L. Perry-Baum a divorce, with the final decree resolving the parties' dispute over property valuation and distribution, allocation of marital debt, contempt accusations, and attorney fees. Finding no error in the trial court's decision, we affirm.

## I. Background and Procedure

{¶ 2} Appellant and appellee married on May 10, 1991, and have one emancipated child, a daughter born May 10, 1999. Appellee is self-employed in his insurance and investment business, David M. Baum Insurance and Investments. Appellee's primary line of work is the sale of employee benefits. He also sells investments, life insurance, and other types of insurance, receiving a commission as part of his earnings. In addition, appellee is part owner of Butler Capital Advisors and Coventry Woods Property Development, owning a half-interest in these entities with his business partner, as well as a half-interest in the office building housing David M. Baum Insurance and Investments.

{¶ 3} Early in the marriage, appellant helped start appellee's insurance and investment business, providing administrative support and designing spreadsheets to assist with bookkeeping. Appellant also worked outside of the home early in the marriage as a benefits administrator for The Andersons, but for over 20 years she has been unable to work, and receives Social Security disability payments of about $23,000 annually.

{¶ 4} The parties also received income from rental properties, including farm property and three rental homes. During the marriage, appellee managed these properties, procuring tenants, collecting rents, and arranging for repair and upkeep of the properties.

{¶ 5} On July 16, 2013, appellee filed a complaint for divorce, and appellant responded with a counterclaim for divorce. The trial court entered temporary orders,

2.

requiring appellee to pay household expenses "as he has been doing," all prescription and medical expenses "either directly or, if charged, to the credit card company," and to pay "a minimum of $2,000.00 per month toward [appellant's] outstanding credit card balance." The trial court later clarified this order, limiting appellee's obligation for appellant's credit card charges to medical-related expenses, food expenses up to $600 per month, pet expenses, and household expenses up to $100 per month. As to additional charges, the trial court ordered "[a]ny other charges shall be paid by [appellant]." Appellee remained obligated for household expenses including the mortgage, taxes, phone, utilities, expenses for the parties' minor child, and the minimum payment on all the credit cards, paying at least $2,000 per month.

{¶ 6} Throughout the proceedings, disputes arose over discovery, with delays caused by both appellant and appellee, and the parties disagreed over interpretation of the temporary orders relative to appellee's monthly obligation. Appellant believed appellee should pay all her credit card charges, averaging about $20,000 per month, in addition to the mortgage, utilities, taxes, and other non-credit card expenses. Appellant also submitted a complaint against appellee with the Financial Industry Regulatory Authority (FINRA), after appellee withdrew funds from one of their daughter's accounts, resulting in investigation of appellee and his business. Appellant and appellee each filed motions to show cause/motions for contempt, which the trial court addressed.

{¶ 7} Prior to trial, the parties reached an agreement regarding the division of some of the marital property. By agreement, appellant retained the marital home and the

3.

income properties, with the rental income increasing her annual earnings to approximately $41,830.68. Appellant also agreed to withdraw her FINRA complaint, and the parties placed their daughter's accounts with another investment broker.[1] Disputes remained, however, regarding the value of appellee's business and personal property, and the equitable distribution of the parties' assets and debts.

{¶ 8} The matter proceeded to trial to address unresolved disputes on December 6 and 7, 2016, January 23, March 14, April 27, May 1, and June 5, 2017. Appellant and appellee each presented expert testimony regarding the valuation of appellee's businesses and valuation of personal property. The parties also introduced testimony and exhibits concerning allocation of property and credit card debts.

{¶ 9} On August 16, 2017, the magistrate filed her decision, and appellee and appellant each filed a timely objection. Pertinent to this appeal, appellant objected to the magistrate's decision to value appellee's business at $250,000, and objected to the magistrate's determination that she was obligated to pay credit card debt and loans listed in her name. Appellant also objected to the amount of attorney fees appellee was ordered to pay, along with the determination that the attorney fees be taxable as additional spousal support. Finally, appellant objected to the magistrate's finding regarding contempt and her motions to show cause. Appellant did not object to the magistrate's

[1] The parties dispute whether appellant withdrew her complaint, and whether FINRA found wrongdoing, but the record indicates FINRA completed its review and made a determination "not to take action" against appellee, communicated by FINRA in a letter to appellant sent April 15, 2016.

4.

provision that required agreement of both appellant and appellee in the use of their daughter's accounts.

{¶ 10} Appellee also filed objections, including an objection to the magistrate's order that appellee file an amended 2015 tax return, removing deductions claimed for alimony payments to appellant, prior to the final decree. Additionally, appellee requested an order that the parties be required to file a joint income tax return, instead, and appellant filed no response to this objection and request.

{¶ 11} On October 26, 2018, appellant filed a new motion to show cause, seeking to enforce the magistrate's decision. Appellant requested an order compelling appellee to endorse insurance checks, to execute various property deeds, and make payments in accordance with the magistrate's decision. Additionally, appellant asked the trial court to find appellee in contempt and to sanction him for his failure to comply with the magistrate's decision.

{¶ 12} On November 5, 2018, the court entered judgment on the objections, granted the parties an absolute divorce, ordered appellee to pay spousal support for 108 months in the amount of $5,000 per month, ordered division of the parties' property and debts, and adopted the magistrate's findings as to the value of appellee's business and the magistrate's determination regarding appellant's credit card debt. The trial court also ordered the parties to file an amended joint tax return for 2015. As to appellant's request for a finding of contempt and sanctions, the court found no contempt, and entered an

5.

order dismissing all other motions. It is from this judgment that appellant now appeals, asserting the following assignments of error:

Assignment of Error No. 1: The trial court's valuation of Husband's businesses and calculation of Husband's payment to Wife to offset the value of Husband's awarded real estate, personal property, and life insurance, were against the manifest weight of the evidence and/or an abuse of discretion.

Assignment of Error No. 2: The trial court's award of all credit card and loan debt in Wife's name to Wife was against the manifest weight of the evidence and/or an abuse of discretion, as Wife's use of credit cards was necessitated by Husband's failure to pay temporary orders.

Assignment of Error No. 3: The trial court abused its discretion in applying the incorrect statutory factors to the calculation of the attorney fees Husband was ordered to pay to Wife, including but not limited to characterizing the attorney fees as property division and making them taxable to Wife and tax deductible to Husband.

Assignment of Error No. 4: The trial court abused its discretion in failing to hold Husband in contempt for violating temporary orders, injunctions, and Local Rules, and in dismissing, without a hearing, all motions pending at the time the Magistrate issued her decision, including Wife's motion for contempt.

6.

Assignment of Error No. 5: The trial court's division of personal property was an abuse of discretion and/or against the manifest weight of the evidence, because, including but not limited to, the trial court incorrectly awarded to Husband certain furniture and other items purchased during the pendency of the divorce, but prior to final hearing.

Assignment of Error No. 6: The trial court improperly ordered that the custodial account for the parties' daughter shall only be used by agreement of [the] parties, as the parties had otherwise agreed that the account would be placed in Wife's name only for the benefit of the parties' daughter.

Assignment of Error No. 7: The trial court erred in ordering Wife to file a joint income tax return with Husband for the year 2015, despite Wife's legitimate concern that the Husband's representation of his income for that year is false.

## II. Analysis

{¶ 13} Appellant challenges certain rulings made in the final decree, arguing the trial court's determinations are against the manifest weight of the evidence and that the trial court abused its discretion. We shall address appellant's assignments of error in turn, noting the applicable standards of review.

## A. Business Valuation

**{¶ 14}** In her first assignment of error, appellant challenges the trial court's acceptance of appellee's expert valuation of the business as either an abuse of discretion or against the manifest weight of the evidence. Essentially, appellant argues that appellee's valuation was too low, based on the evidence presented, and that her expert's business valuation was more accurate. As a result of this claimed error, appellant argues that the trial court's calculation of payment to appellant, to offset the value of assets awarded to appellee, created an inequitable division of property and constituted an abuse of discretion.

**{¶ 15}** "We review factual determinations of the value of marital property to see whether they are against the manifest weight of the evidence." (Citation omitted.) *Moore v. Moore*, 175 Ohio App.3d 1, 2008-Ohio-255, 884 N.E.2d 1113, ¶ 50 (6th Dist.). In determining the value of property, "a trial court is not confined to the use of a particular valuation method, but can make its own determination as to valuation based on the evidence presented." *Miller v. Miller*, 6th Dist. Sandusky No. S-16-27, 2017-Ohio-7646, ¶ 21, citing *Chattree v. Chattree*, 2014-Ohio-489, 8 N.E.3d 390, ¶ 43 (8th Dist.). We will not reverse the trial court's judgment unless we find a lack of competent, credible evidence in support. *Moore* at ¶ 50, citing *C.E. Morris, Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978).

**{¶ 16}** As to determinations regarding property awards in divorce proceedings, a trial court "may divide property as it deems equitable, * * * [with] broad discretion in

8.

arriving at an equitable property division." *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982), quoting *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981).

{¶ 17} At trial, both parties introduced expert testimony and reports regarding the value of appellee's business. Appellant's expert applied both an income and market approach in reaching his determination, while appellee's expert utilized an income approach. Appellant does not challenge the qualifications of appellee's expert, but instead, argues appellee's expert relied inordinately on appellee's self-reported, unverified income and expenses, and failed to consider the market factors. Appellant argued that her expert's combined income and market approach provided the better, and more accurate, valuation.

{¶ 18} In finding appellee's valuation of $250,000 represented the fair market value for the business, the trial court determined an income approach most accurate. The trial court noted deficiencies with appellant's valuation, including appellant's emphasis on the investment component of the business out of proportion with appellee's actual business, and the appellant's use of comparable business data, using a market approach, that did not align with appellee's unique business. After considering the evidence, the trial court found appellee's expert valuation more reliable and valued the business at $250,000. In reaching this determination, the trial court noted that appellee's expert, unlike appellant's expert, spent time with appellee, learning about the "specific nature of

9.

[appellee's] business, spent time with [appellee] to fully understand the unique mix of revenue sources, and understood the locale and risk of [appellee's] business."

{¶ 19} In reviewing the record, we find no error in the trial court's acceptance of appellee's valuation for his business. As evidenced by its decision, the trial court carefully reviewed the magistrate's factual findings and the record, and cited to supporting evidence in the record in selecting appellee's valuation. Accordingly, we find the weight of the evidence supports the trial court's determination as to the value of appellee's business.

{¶ 20} Finding no error in the valuation, it follows that the trial court did not abuse its discretion in determining an equitable division of property based on this valuation. Appellant argues an inequitable distribution of assets, arising from the trial court's valuation of the business.[2] As previously noted, a trial court has "broad discretion in arriving at an equitable property division." *Berish,* 69 Ohio St.2d at 319, 432 N.E.2d 183, quoting *Cherry,* 66 Ohio St.2d at 355, 421 N.E.2d 1293. Appellant's argument, however, merely restates her challenge to the trial court's determination in valuing appellee's business at $250,000, while also incorporating argument raised in separate assignments of error relative to the allocation of credit card debt and decisions regarding contempt of court related to the temporary orders. Based solely on the business

---

[2] Appellant also references a vehicle, sold during the pendency of the divorce, as property that the trial court should have credited to appellant, based on the fair market value. The record, however, fails to demonstrate that appellant raised any objection relative to this vehicle as part of the business valuation.

valuation, we find no abuse of discretion by the trial court in determining the amount to credit appellant in the property distribution. Appellant's first assignment of error, therefore, is not well-taken.

## B. Credit Card Debt

{¶ 21} In her second assignment of error, appellant challenges the allocation of credit card debt as either an abuse of discretion or against the manifest weight of the evidence, arguing the trial court incorrectly allocated the debt as her own debt, rather than finding the amounts charged resulted from appellee's failure to make all payments under the temporary orders.

{¶ 22} As previously noted, we apply the manifest weight standard in reviewing factual determinations regarding the value of marital property. *See Moore,* 175 Ohio App.3d 1, 2008-Ohio-255, 884 N.E.2d 1113, at ¶ 50. In challenging the allocation of marital debt, however, appellant does not dispute any amount of debt, arguing instead that the trial court erred in dividing the debt. The issue is therefore one of property division, and the manifest weight standard, accordingly, is inapplicable.

{¶ 23} "The property to be divided in a divorce proceeding includes not only the assets owned by the parties, but also any debts incurred by the parties." *Beran v. Beran*, 6th Dist. Wood No. WD-03-070, 2004-Ohio-2456, ¶ 20, citing *Marrero v. Marrero*, 9th Dist. Lorain No. 02CA008057, 2002-Ohio-4862, ¶ 43. A trial court is "vested with broad powers in determining the appropriate scope of property awards in divorce actions." *Berish*, 69 Ohio St.2d at 319, 432 N.E.2d 183 (1982). An equitable distribution,

furthermore, does not always mean an equal distribution. *Cherry*, 66 Ohio St.2d at 355, 421 N.E.2d 1293.

{¶ 24} Construing the record, the trial court considered the value of real property awarded to each party, as well as the value of marital retirement accounts, bank accounts, and investment accounts, the cash value of life insurance policies, the value of personal property, and the value of appellee's business. The trial court deemed all credit card debt as marital debt, and held each party responsible for the credit card debt in their own name. As noted by appellee, moreover, the trial court allocated about two-thirds of the marital debt to appellee, and ordered appellee to make a $15,000 payment to appellant to apply toward her debt. Appellant's challenge to the allocation of credit card debt ignores the comprehensive evaluation and overall division of property and debt.

{¶ 25} As to appellant's credit card debt, the trial court also addressed her argument that appellee's failure to comply with the temporary orders caused her credit card debt to balloon, and found no merit in appellant's argument. The record demonstrated that appellant used about $60,000 of funds from a joint account for litigation and other expenses, and appellant interpreted the temporary orders as requiring appellee to pay everything she charged on her credit card. Appellant used credit cards for dining out, travel, and shopping, in addition to household and medical expenses. The temporary orders, however, clearly required appellee to pay for household expenses, including the mortgage, taxes (house and auto), phone and all utilities, prescription and medical expenses, pet expenses, food expenses up to $600 per month, and miscellaneous

12.

household expenses up to $100 per month, with an order that "[a]ny other charges shall be paid by [appellant]." Appellant does not claim that appellee failed to make designated payments, arguing instead that appellee failed to pay off her credit card balances each month.

{¶ 26} Appellee was also obligated to "ensure that a minimum payment is made on all their cards" and pay a minimum of $2,000 on the credit cards each month. While there were months that appellee did fall short of the $2,000 amount, the trial court found appellee substantially complied with the temporary orders, considering all relevant circumstances. Accordingly, upon review of the record, we find no abuse of discretion by the trial court in allocating appellant's credit card debt to her as part of the overall division of marital property and debt, and appellant's second assignment of error is not well-taken.

### C. Attorney Fees

{¶ 27} Appellant next challenges the calculation and characterization of attorney fees in her third assignment of error, arguing the award is too low and the trial court incorrectly designated the award as additional spousal support. "An award of attorney fees must be fair, equitable, and serve the ends of justice." *Steinle v. Steinle*, 2018-Ohio-3985, 120 N.E.3d 478, ¶ 41 (6th Dist.), citing *Garritano v. Pacella*, 6th Dist. Lucas No. L-07-1171, 2009-Ohio-2928, ¶ 101, citing *Bowen v. Bowen*, 132 Ohio App.3d 616, 642, 725 N.E.2d 1165 (9th Dist.1999). An award of attorney fees is reviewed for abuse of discretion. *Id.*, citing *Garritano* at ¶ 101.

13.

**{¶ 28}** Appellant accrued attorney fees in the amount of $125,541.95 prior to the final decree, and argues that the trial court's award of fees in the amount of $25,000 was an abuse of discretion. In determining an equitable award of attorney fees, a trial court may consider "the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A). In awarding those fees as additional spousal support, the trial court must also consider the equitable factors in R.C. 3105.18(C)(1). *See Rohlman v. Rohlman*, 2018-Ohio-1543, 110 N.E.3d 1006, ¶ 19 (6th Dist.).

**{¶ 29}** Appellant argues that the trial court awarded attorney fees based on her use of marital funds to pay some of her attorney fees and on her role in causing the FINRA investigation, which she argues was within her rights to initiate as custodian for her daughter's accounts. Upon review, however, it is clear that the trial court considered the necessary factors and recited findings in support of the award.

**{¶ 30}** As to spousal support, the trial court separately considered factors under R.C. 3105.18(C)(1), including, in part, the income, education, and relative earning capacity of the parties, the duration of the marriage and standard of living established during the marriage, the age and health of the parties and their retirement benefits, the relative assets and liabilities, and the tax consequences, for each, of an award of spousal support. In determining an award of $5,000 per month as equitable spousal support, the trial court considered both appellant's need for assistance, considering the unequal

14.

earning capacity of the parties, and appellee's need to maintain his own household and expenses.

{¶ 31} As permitted by R.C. 3105.73(D), the trial court awarded attorney fees as additional spousal support, referencing the findings of fact and addressing the factors under R.C. 3105.73(A).[3] The trial court noted that appellant's attorney fees were over $125,000 and appellee's fees were approximately $78,000. The trial court further found that both parties caused delay—appellee in producing discovery and appellant in "making repeated requests for information in different formats and by making duplicative requests." Appellant also caused delay by initiating a FINRA investigation of appellee's business.

{¶ 32} The record in this case contradicts appellant's claim that the trial court exhibited bias toward her in ordering a low award of attorney fees. The trial court considered the applicable factors, found appellant was responsible for some of the delay in the proceedings and had already received $15,150 out of marital funds in the form of attorney fees and litigation expenses, and awarded $25,000 in additional attorney fees as additional spousal support, as permitted under R.C. 3105.73(D). We find nothing, within the record, demonstrating this amount constituted an abuse of discretion.

{¶ 33} Additionally, appellant argues that the designation of the amount awarded as additional spousal support was contrary to law, citing current law, 26 U.S.C. 212,

---

[3] The magistrate referenced the correct statute within the findings of fact, but in the order, referenced R.C. 3105.171 in error. The trial court corrected the error in the final decree.

15.

rather than the law in effect at the time of the final decree. The applicable law, former 26 U.S.C. 215, provided:

> (a) In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year.

While Congress repealed 26 U.S.C. 215, the law remains in effect for spousal support ordered by divorce decrees entered on or before December 31, 2018. *See* Baldwin's Oh. Prac. Dom. Rel. L. 28:2 (4th Ed.) ("[T]he effective date for this law change is for any divorce or separation agreement executed *after* December 31, 2018.") (Emphasis sic.).

{¶ 34} Upon review of the record and applicable law, we find no error in the trial court's award of $25,000 as additional spousal support, designated as taxable to appellant and deductible by appellee. Appellant's third assignment of error, therefore, is not well-taken.

### D. Contempt

{¶ 35} Appellant next argues, in her fourth assignment of error, that the trial court abused its discretion in dismissing "all pending motions," without hearing, and failing to hold appellee in contempt for violating temporary orders. We review the denial of a motion for contempt for abuse of discretion. *Sigel Seaman v. Sloan*, 2016-Ohio-5432, 60 N.E.3d 1270, ¶ 12 (6th Dist.), citing *Beck v. Beck*, 6th Dist. Fulton No. F-007-021, 2008-Ohio-4027, ¶ 19. We will not reverse the determination unless we find the trial court's

16.

attitude in ruling was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 36} At the time of the trial court's final decree, only one motion remained pending, as the trial court had addressed all other motions for contempt prior to or within the magistrate's decision. Contrary to appellant's argument, moreover, the trial court addressed appellant's prior motions throughout the proceedings after hearing, with the final ruling entered after the completion of the trial. Therefore, appellant's claim that the trial court failed to hold hearing is without merit.

{¶ 37} The magistrate reviewed appellant's claims regarding the temporary orders and found no contempt. Appellant objected to this finding, and the court considered the objections and reviewed the record. The court found the magistrate's ruling "properly determined that there should be no finding of contempt." This finding was clearly within the trial court's discretion. *See, e.g., State ex rel. Celebrezze*, 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991) ("This court will not reverse the decision of the court below in a contempt proceeding in the absence of a showing of an abuse of discretion.").

{¶ 38} Furthermore, while the trial court did not hold hearing as to appellant's latest motion, filed after the magistrate's decision but prior to the final decree, this motion sought to enforce portions of the magistrate's decision despite pending objections, not yet addressed within a final decree. Therefore, appellant sought to enforce provisions that had yet to take effect, since "[a] magistrate's decision is not effective unless adopted by the court." Civ.R. 53(D)(4)(a). Additionally, appellant's only pending motion sought to

17.

enforce matters not referenced in this appeal. Instead, appellant now challenges the magistrate's finding that appellee substantially complied with temporary orders, the subject of prior motions, and the magistrate's finding that appellant's credit card debt and loan remained appellant's obligation, a component of the trial court's distribution of marital property and debt.[4]

{¶ 39} Punishment for contempt may be appropriate for violation of court orders, pursuant to R.C. 2705.02. The orders which appellant seeks to enforce, however, are temporary orders, superseded by the final decree entered by the trial court. The final decree of divorce replaces "all that has transpired before it." *Colom v. Colom*, 58 Ohio St.2d 245, 247, 389 N.E.2d 856 (1979). "The right to enforce such orders 'does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree.'" *Trickey v. Trickey*, 6th Dist. Lucas No. L-09-1307, 2011-Ohio-140, ¶ 19, quoting *Colum* at the syllabus. Here, the trial court made a specific finding that "there is no finding of contempt."

{¶ 40} To the extent that appellant argues abuse of discretion or that a hearing is necessary, the motion pending at the time of the final decree is wholly unrelated to any issue argued in this appeal. Accordingly, with no pending motion addressing the issues

---

[4] While appellant does reference the October 26, 2018 motion in her reply brief, she does not address the substance of that motion in her appeal, reserving argument to her claims that appellee violated temporary orders by not paying household expenses.

18.

now asserted on appeal, and no separate judgment as to any amounts claimed due under the temporary orders, appellant may not seek to enforce any claimed deficiency on appeal, in a collateral attack characterized as contempt. Appellant's fourth assignment of error, therefore, is not well-taken.

### E. Personal Property

{¶ 41} In her fifth assignment of error, appellant challenges the property distribution as an abuse of discretion or against the manifest weight of the evidence. Appellant particularly notes, as error, the trial court's award to appellee of "certain furniture and other items purchased during the pendency of the divorce, but prior to final hearing."

{¶ 42} The trial court has "broad discretion to fashion a decree that is equitable upon the facts and circumstances of each case." *Shilling v. Shilling*, 6th Dist. Ottawa No. OT-08-042, 2009-Ohio-1476, ¶ 18, quoting *Guziak v. Guziak*, 80 Ohio App.3d 805, 811, 610 N.E.2d 1135 (9th Dist.1992), citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990); *Teeter v. Teeter*, 18 Ohio St.3d 76, 479 N.E.2d 890 (1985). In dividing marital property, a trial court considers the following factors:

> (1) The duration of the marriage;
>
> (2) The assets and liabilities of the spouses;
>
> (3) The desirability of awarding the family home, or the right to
> reside in the family home for reasonable periods of time, to the spouse with
> custody of the children of the marriage;

19.

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable. R.C. 3105.171(F).

{¶ 43} At issue, here, is the trial court's award of personal property to appellee, purchased during the pendency of the divorce by appellee for his new home. In challenging the award, appellant argues the trial court failed to assign a value to this property, as marital property, ignoring the fact that appellee purchased the property with credit cards or financing, and the balances remained unpaid and the sole obligation of appellee. In the final decree, the trial court noted:

20.

In reviewing the transcript of this matter, the applicable law, and the particular circumstances involved in [appellee's] purchase of furniture, furnishings, and appliances for his own home this Court finds that the Magistrate properly determined the factual issues and appropriately applied the law. In making this conclusion the Court makes particular note of the Magistrate's Finding of Fact 54, which is supported by the transcript in this matter, finding that all of these items were acquired for the exclusive use of [appellee], in a separate household never occupied by [appellant], and remain the sole financial obligation of [appellee].

{¶ 44} While appellant argues that the trial court never determined the value of these marital assets, it is clear the trial court determined the value to be completely offset by the debt owed for this property. Appellee's uncontroverted testimony supports this finding, as appellee testified he obtained financing or used credit cards to furnish his new home, and the debts for these furnishings remained unpaid. The trial court, therefore, was within its discretion in awarding both the asset and the debt to appellee, and appellant's fifth assignment of error is not well-taken.

### F. Custodial Accounts

{¶ 45} Appellant's sixth assignment of error concerns the court-ordered joint control over their daughter's custodial accounts. Appellant argues that the trial court erred in not designating her as sole custodian, based on the parties' prior stipulation. Appellee disputes appellant's claim of a stipulation, noting the lack of any adoption by

21.

the court or reference within the final decree. Furthermore, appellee argues that appellant waived this error in failing to object to the magistrate's decision, which specified that the funds be used for their daughter, "by agreement of the parties."

{¶ 46} After thoroughly reviewing the record, we find no stipulation that designates appellant as sole custodian, expressly adopted by the trial court. The custodial accounts, moreover, are the property of the parties' adult daughter, within months of her 21st birthday, and neither marital nor separate property of the parties. *See Miller v. Miller*, 9th Dist. Wayne No. 07CA0061, 2008-Ohio-4297, ¶ 20, citing *Wilson v. Wilson,* 9th Dist. Wayne No. 95CA0089, 1996 WL 411631 at *5 (July 24, 1996) (custodial accounts are neither marital nor separate property, but are property of the child). Finally, appellant failed to object to the magistrate's decision, which ordered the funds to be used only for the benefit of the daughter "by agreement of the parties" until their daughter reaches the age of 21.

{¶ 47} Pursuant to Civ.R. 53(D)(3)(b)(iv), "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ. R. 53(D)(3)(b)." In failing to object, appellant has waived appellate review for all but error that "rises to the level of challenging the legitimacy of the underlying judicial process itself." *Burns v. Burns*, 6th Dist. Sandusky No. S-07-019,

22.

2008-Ohio-2483, ¶ 17, citing *Seaburn v. Seaburn*, 5th Dist. Stark No. 2004CA00343, 2005-Ohio-4722, ¶ 46 (additional citations omitted.).

{¶ 48} Appellant asserts no error that threatens "the legitimacy of the underlying judicial process itself." Instead, appellant argues a stipulated agreement that appellee disputes, and that the trial court did not adopt. The stipulation upon which appellant relies was contradicted within the magistrate's decision, appellant failed to raise any objection, and the trial court's order, requiring the custodial accounts to be used by agreement of the parties in no way threatens the legitimacy of the process. Appellant's sixth assignment of error, therefore, is not well-taken.

## G. Joint Income Tax Filing

{¶ 49} In her seventh and final assignment of error, appellant argues that the trial court erred in ordering the parties to file a joint tax return for 2015. While acknowledging the trial court had authority to determine this issue, appellant argues that forcing her to file a joint return for 2015 would expose her to potential civil or criminal consequences based on her legitimate concern that appellee intends to file a fraudulent or incorrect return.

{¶ 50} "As part of a property division, the trial court has authority to determine whether the parties will file joint or separate tax returns." *Cherry v. Cherry*, 6th Dist. Ottawa No. OT-98-011, 1998 WL 904897 at *3 (Dec. 31, 1998); *see also Bowen v. Bowen,* 132 Ohio App.3d 616, 725 N.E.2d 1165 (9th Dist.1999). While appellant raised the issue of misconduct relative to appellee's tax filing, a "trial court has discretion in

23.

determining whether a spouse committed financial misconduct, subject to a review of whether the determination is against the manifest weight of the evidence." *Sullinger v. Sullinger*, 6th Dist. Lucas No. L-18-1079, 2019-Ohio-1489, ¶ 41, quoting *Boggs v. Boggs*, 5th Dist. Delaware No. 07 CAF 02 0014, 2008-Ohio-1411, ¶ 73.

{¶ 51} Here, appellant argues that appellee may submit false information in his tax filing, based on claims that appellee misrepresented personal expenditures as business-related in prior tax filings, to achieve a higher refund. It is clear, however, that appellant never objected to appellee's request for a joint filing, which was raised by appellee in objection to the magistrate's order that he file an amended return to correct his deduction for alimony. Additionally, appellant cites to no evidence in the record to support her claim that appellee intends to file a fraudulent or inaccurate return. Therefore, we find no basis to find the trial court abused its discretion in ordering a joint return, and appellant's seventh assignment of error is not well-taken.

### III.  Conclusion

{¶ 52} For the foregoing reasons, the judgment of the trial court is affirmed. Appellant is assessed the costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                         _____
                                                                            JUDGE

Christine E. Mayle, P.J.

Gene A. Zmuda, J.                            _____
CONCUR.                                                      JUDGE

_____
                                                      JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.